**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

A.S.M.,

        Petitioner,

    v.

TODD LYONS, et al.,

        Respondents.

No. 26 C 5381

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

A.S.M., a Mexican national with an aggravated felony conviction who was released and re-detained years later by Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, that petition is granted.

**Background**

A.S.M. is a 45-year-old transgender woman from Mexico who has lived in the United States for over 25 years. R. 1 ¶¶ 8, 15. On February 18, 2022, A.S.M. was convicted of indecent solicitation of a child/aggravated criminal sexual abuse, sentenced to a term of three years' time served, and placed on the sex offender registry. R. 1 ¶ 17; R. 12-1 (conviction records). She was also convicted of attempted possession of a controlled substance, for which she served 100 days in state custody. R. 1 ¶ 17.

Upon her release from state custody on November 7, 2022, ICE initiated removal proceedings. *Id.* ¶ 18. A.S.M. applied for asylum, withholding of removal,

and relief under the Convention Against Torture in September 2023 and received employment authorization in March 2024. *Id.* She also requested safeguards in connection with her severe post-traumatic stress disorder, depressive episodes, panic attacks, and hallucinations. *Id.*; R. 1-5. Her removal proceedings are ongoing.

Also on November 7, 2022, ICE briefly placed her in custody before releasing her on her own recognizance, contingent on her participation in the Intensive Supervision Appearance Program ("ISAP") and her compliance with certain conditions of release. R. 1 ¶ 19; R. 1-1 (Order of Release on Recognizance); R. 12-4 (Order of Release on Recognizance with addendum); R. 1-2 (Notice of Custody Determination); R. 1-3 (Notice to Appear). Conditions of release included wearing a GPS tracking ankle bracelet, attending regular in-person and at-home check-ins, and refraining from violating any local, state, or federal laws, among others. R. 1 ¶¶ 19, 21; R. 1-1; R. 12-4. The release order stated that failure to comply with the conditions of release "may result in revocation of your release and your arrest and detention by [ICE]."[1] R. 1-1; R. 12-4.

According to A.S.M., for three and a half years, she overwhelmingly complied with these conditions, attending regular check-ins, wearing her ankle monitor, and maintaining regular communication with her assigned case worker. R. 1 ¶ 23; R. 16-

---

[1] The release order included several similar statements. *E.g.*, R. 12-4 at p. 1 ("Failure to comply with the [Alternatives to Detention] program will result in a redetermination of your release conditions or your arrest and detention."); *id.* ("I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution."); *id.* at p. 3 ("Any violation of these conditions [in the addendum] may result in you being taken into ICE custody and you being criminally prosecuted.").

1. Respondents state that she violated her conditions of release 19 times, including violations for missed home and office visits and strap tampers between May and December 2025. R. 12-3 at 2–3 (Form I-213 Encounter Record); R. 12-5. Separately, on March 13, 2024, A.S.M. was convicted of attempted failure to register as a sex offender and sentenced to 24 months of supervision. R. 1 ¶ 20.

Despite regular contact, ICE never sought to detain A.S.M. until May 6, 2026, when she appeared for her ISAP check-in. A.S.M. had no prior notice that her release was being revoked or that she would be taken into custody that day. *Id.* ¶ 22; R. 12-3 (Form I-213 Encounter Record). Upon hearing about A.S.M.'s detention, her counsel requested justification from ICE, who stated that A.S.M.'s release was revoked because of her arrest and conviction history. R. 1 ¶ 23. Respondents' records state that they revoked her release because she repeatedly violated the conditions of her release. R. 12-3 at pp. 3, 4 ("A review of [A.S.M.'s] case while released under ISAP indicates that [A.S.M.] is a recidivist violator who has not shown consistent compliance while enrolled in [Alternatives to Detention]. A review of [A.S.M.'s] case was performed and a determination was made to cancel [her] release and proceed with a custody redetermination."); *see also* R. 12-6 (revocation letter documenting cancellation of the release order "for the reasons stated in Form I-213"). Yet, the most recent purported violation was four and a half months before A.S.M.'s arrest, and she had eight successful check-ins in the intervening period. R. 16-1.

A.S.M. is currently detained at the South Texas ICE Processing Center. R. 15. She has filed a petition for habeas corpus under 28 U.S.C. § 2241, claiming that her

detention violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA"). She seeks her immediate release or substitute process in the form of a custody hearing wherein the Government bears the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community.[2]

## Legal Standard

A petition for writ of habeas corpus is the proper vehicle for petitioners who contend that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas petitioners bear the burden of showing that their detention is unlawful. *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *2 (N.D. Ill. Oct. 16, 2025) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

## Discussion

8 U.S.C. § 1226 governs the detention of noncitizens during removal proceedings. Section 1226(c) mandates the detention of noncitizens who have committed certain criminal offenses, permitting release only if the Attorney General decides that release is necessary for witness-protection purposes and the noncitizen poses no danger or flight risk. *See* 8 U.S.C. § 1226(c)(1)–(2), (4); *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

---

[2] A.S.M. initially requested an order for her immediate release and an injunction barring her re-detention without a custody hearing before a neutral arbiter in which the Government bears the burden of proving by clear and convincing evidence that she is a flight risk or danger to the community. R. 1 at p. 13. The Court understands from her latest filing that she now seeks "immediate release *or* substitute process in the form of a custody determination hearing." R. 24 at p. 1 (emphasis added).

There is no dispute that A.S.M. is subject to § 1226(c) due to her aggravated felony conviction. While the Supreme Court has upheld the constitutionality of mandatory detention without a custody hearing under § 1226(c) on a facial challenge, *Demore v. Kim* 538 U.S. 510, 513 (2003), it has not foreclosed as-applied challenges, *Nielsen v. Preap*, 586 U.S. 392, 420 (2019). Here, A.S.M. challenges the constitutionality of § 1226(c) as applied to her particular circumstances, namely that ICE intentionally released her and allowed her to remain out of custody for years before re-detaining her. She claims that the revocation of her release without notice, a showing of changed circumstances, and an opportunity to respond violated her right to procedural due process. That type of constitutional challenge to mandatory detention under § 1226(c) remains viable.[3]

The Due Process Clause of the Fifth Amendment prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Its protections "appl[y] to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). A substantive due process claim is that the Government "cannot deprive [the claimant] of their asserted liberty interest *at all*," while a procedural due process claim is that the Government cannot "cannot deprive [the claimant] of their

---

[3] To the extent Respondents contend that the Supreme Court has only left room for § 1226(c) detainees to bring as-applied challenges to their detention on the ground that their detention has become unreasonably prolonged or removal proceedings have become a sham, those limitations are not found in *Nielsen. See* 586 U.S. at 420 ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

asserted liberty interest . . . on the basis of the procedures it provides." *Reno v. Flores*, 507 U.S. 292, 302, 306 (1993) (emphasis in original).

Respondents argue that A.S.M. cannot bring her as-applied challenge as a procedural due process claim. They rely principally on *Conn. Dep't of Public Safety v. Doe*, wherein the Supreme Court held that sex offenders did not have a procedural due process right to a hearing on their current dangerousness before their inclusion in a public registry. 538 U.S. 1, 7–8 (2003). The Court explained that procedural "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," and the state law required registration for all convicted sex offenders regardless of their dangerousness. *Doe*, 538 U.S. at 3. Therefore, the claim to a hearing had to be analyzed in terms of substantive, not procedural, due process. *Id.* at 8. In Respondents' view, because § 1226(c) mandates A.S.M.'s detention based on her aggravated felony conviction alone, she has no procedural due process right to a custody hearing, and her claim must be analyzed in terms of substantive due process.

But the challenge to inclusion in a public sex offender registry based on reputational harm in *Doe* is fundamentally different from A.S.M.'s challenge to the revocation of her release based on her interest in remaining out of physical custody. *E.g.*, *Gomez Hernandez v. ICE Field Off. Dir.*, No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026) (finding *Doe* inapplicable in the immigration context).[4]

---

[4] Indeed, "[i]n the 23 years since the Supreme Court decided *Doe*, no federal appellate court has ever applied that decision to an immigration case—despite a surfeit of cases

6

The Court thus joins the numerous courts that have rejected the precise argument raised by Respondents, including in the context of § 1226(c) detention. *E.g.*, *Lino Ramos v. Moniz*, No. CV 25-10470-BEM, 2026 WL 1759415, at \*5 n. 8 (D. Mass. June 18, 2026) (citing cases).[5] A.S.M.'s claim is properly analyzed in terms of procedural due process.

Procedural due process "generally involves a familiar line of inquiry: "(1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017).

I. Liberty Interest

A.S.M. has a protected liberty interest in remaining out of custody. She obtained that liberty interest when ICE decided to release her from immigration custody over three-and-a-half years ago, notwithstanding her aggravated felony conviction. That interest exists even though A.S.M.'s release was subject to certain conditions of release. *See E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (holding that noncitizen who was re-detained for

---

addressing the question of what, if any, protections procedural due process requires under [the] mandatory detention regime in 28 U.S.C. § 1226(c)." *Rodriguez v. Ortega*, No. 26-50183, 2026 WL 1906557, at \*8 (5th Cir. July 2, 2026), reh'g en banc granted, opinion vacated, No. 26-50183, 2026 WL 2014647 (5th Cir. July 10, 2026).

[5] Respondents' citation to *Flores* and *Michael H. v. Gerald D.*, 491 U.S. 110 (1989) (plurality opinion) in furtherance of this argument fares no better. Respondents' alteration of the quote from *Flores* misconstrues its meaning, and *Michael H.* involved a different right and statutory scheme from the case at bar. *See Moncebais v. Bondi*, No. 5:26-CV-268, 2026 WL 1862153, at \*5 (S.D. Tex. Mar. 27, 2026) (distinguishing *Flores* and *Michael H.* where respondents raised identical arguments and holding that petitioner could challenge detention using procedural due process).

allegedly violating release conditions had protected liberty interest even though release was conditional); *cf. Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (individual whose parole is revoked has a "valuable" liberty interest despite "indeterminate" nature of his freedom); *Young v. Harper*, 520 U.S. 143, 148 (1997) (individual placed in pre-parole program had liberty interest akin to parolee). And it exists even though A.S.M. is subject to § 1226(c). *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1037–38 (N.D. Cal. 2025) (finding liberty interest where ICE conditionally released noncitizen subject to § 1226(c) and re-detained him five years later); *cf. Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) (finding liberty interest where ICE declined to detain noncitizen subject to § 1226(c) for six years after completion of federal sentence).

Respondents contend that A.S.M. has no liberty interest under *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). In that case, the Seventh Circuit held that a petitioner who was subject to mandatory detention under § 1226(c) and conceded his removability did not have a liberty interest in remaining in the United States. *Parra*, 172 F.3d at 958 ("The private interest here is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land[.]" (emphasis in original)). But that case did not involve a petitioner's re-detention following an earlier release by immigration authorities. In addition, A.S.M. is actively seeking asylum, withholding of removal,

8

and other relief under the Convention Against Torture. As such, *Parra* doesn't foreclose the existence of a liberty interest in these circumstances.[6]

Further, the fact that *Morrissey* and *Young* arose in the context of criminal detention does not render them inapposite. Instead, they demonstrate how a specific conditional release can give rise to a protected liberty interest. *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (applying *Morrissey* and *Young* in finding petitioner subject to § 1226(c) obtained liberty interest when released on conditions); *Duong*, 800 F. Supp. 3d at 1037–38 (same). Indeed, the fact that this case arises in the civil detention context arguably makes A.S.M.'s liberty interest greater than that of the pre-parolees in *Young* or the parolees in *Morrissey*. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). In sum, A.S.M. has a protected liberty interest in remaining out of custody.

II.    *Mathews* Factors

To determine what process is due and when, the Court balances three factors: "[1] the private interest at stake; [2] the risk of erroneous deprivation and the value, if any of additional procedural safeguards; and [3] the government's countervailing interests." *Simpson*, 860 F.3d at 1006 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335

---

[6] Respondents' citation to *Dep't of State v. Muñoz*, 602 U.S. 899 (2024) is similarly unavailing. There, the Supreme Court held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Muñoz*, 602 U.S. at 909. Here, petitioner pursues her own liberty interest, created by virtue of her release by immigration authorities, in connection with her own re-detention.

(1976)); *see also Parra*, 172 F.3d at 958 (applying *Mathews* to evaluate the constitutionality of mandatory detention of § 1226(c)).

As to the first factor, A.S.M.'s private interest in remaining out of custody is substantial as a general matter because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citation omitted). The fact that A.S.M. spent more than three and a half years outside of custody and has severe mental health challenges make that interest even stronger.

As to the second factor, there is a significant risk of erroneous revocation in these circumstances. Respondents state that A.S.M. was placed back into custody as a flight risk based on her 19 violations of the conditions of release. *See* R. 12 at p. 10; R. 12-3 at p. 3, 4. Yet neither the revocation letter nor the encounter record specifies what the alleged violations were or when they occurred. There is also some reason to doubt the accuracy of these records and the stated basis of revocation. A.S.M. offers evidence that the four purported violations between May and December 2025, for which Respondents offer documentation, either were not violations or were resolved with her case manager. Further, in the four-and-a-half months between the most recent alleged violation and her re-detention, A.S.M. had eight successful check-ins with her case manager without any discussion of any purported violation or noncompliance. These circumstances present a risk of erroneous revocation in the absence of additional process.

By the same token, the probable value of additional procedural safeguards is high. A hearing before a neutral adjudicator would serve to reduce the risk of erroneous revocation by providing a forum to resolve any factual issues pertaining to A.S.M.'s compliance with the conditions of her release and ICE's assessment that she is now a flight risk. *See Grajeda Velazquez v. Wamsley*, No. 2:25-CV-02641-JHC, 2026 WL 84223, at *4 (W.D. Wash. Jan. 12, 2026) (finding high risk of erroneous deprivation and high value of pre-deprivation notice and opportunity to be heard where ICE re-detained petitioner for allegedly violating release conditions); *see also Victoriano v. Mullin*, No. 2:26-CV-00886-RAJ, 2026 WL 1194596, at *5–7 (W.D. Wash. May 1, 2026) (same); *E.A.*, 795 F. Supp. 3d at 1322–23 (same).

As to the third factor, the interest in re-detaining A.S.M. without a custody hearing is low. To be sure, the Government has significant interests in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Those interests are particularly salient where, as here, the noncitizen has been convicted of an aggravated felony and there are allegations of repeated violations of the conditions of release. However, those interests are undermined by ICE's decision to release A.S.M. in the first place and to allow her to remain out of custody in the months and years that followed the alleged violations. Moreover, the burden on the Government of providing a hearing is minimal. *Cf. Carballo*, 2025 WL 2381464, at 8 (explaining that "custody hearings are routine and impose a minimal cost").

11

Respondents argue that even if A.S.M. can state a cognizable procedural due process claim, *D.H.S. v. Thuraissigiam*, 591 U.S. 103, 138 (2020) limits the process available to her to that "expressly conferred by Congress," which is a "*Joseph* hearing" on whether she is properly classified as subject to § 1226(c). *See In re Joseph,* 22 I. & N. Dec. 799 (BIA 1999). But *Thuraissigiam* concerned the due process rights of a noncitizen who was detained within 25 yards of crossing the border. 591 U.S. at 107. Such a noncitizen, the Supreme Court held, could not be said to have "effected an entry" and "has only those rights regarding admission that Congress has provided by statute." *Id.* at 140. A.S.M was detained hundreds of miles from the border decades after her entry, and she challenges her re-detention, not any removal decision. *Thuraissigiam* does not preclude a custody hearing in this case.

Therefore, in consideration of the *Mathews* factors, the Court finds that due process entitles A.S.M. to a custody hearing. The Court also follows the lead of the "overwhelming consensus" of other courts that have placed the burden on the Government to show by clear and convincing evidence that a noncitizen detainee poses a flight risk or a danger to the community. *Ochoa Ochoa*, 2025 WL 3928779, at *8. Moreover, with this finding, the Court does not reach the APA theory of relief. *E.g.*, *Mendoza Aranguen v. Olson*, No. 26 C 5889, 2026 WL 1662133, at *8 n. 3 (N.D. Ill. June 9, 2026) (declining to address APA claim where petitioner was entitled to a bond hearing based on due process theory).[7]

---

[7] A.S.M.'s counsel also stated at oral argument that she intends to raise a separate substantive due process claim. That claim is not directly addressed in her briefs.

12

## Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is granted. Due process entitles A.S.M. to a custody hearing. If a custody hearing has not been conducted within seven days of this Order, Respondents are ordered to release A.S.M. under her previous conditions of supervision until such a custody hearing has been provided.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: July 15, 2026

---

Regardless, because A.S.M. has a procedural due process right to a custody hearing, the Court need not consider any separate substantive due process claim.

13